Patricia A. FRANCIS, and Eric J. Francis, Plaintiffs,

v.

SENTRY INSURANCE CO., A Mutual Company, Defendant.

No. Civ.A. 98–10698–REK.

United States District Court, D. Massachusetts.

Nov. 17, 1999.

Edmund P. Hurley, Lowell, MA, for Patricia A. Francis, Eric J. Francis, plaintiffs.

Paul V. Lyons, Michael L. Rosen, Pamela Blatte, Foley, Hoag & Eliot, Boston, MA, for Sentry Insurance a Mutual Company, defendant.

## Opinion

KEETON, District Judge.

### I. Pending Motion

Pending for decision is the following matter:

Defendant's Motion for Summary Judgment (Docket No. 37, dated October 13, 1999, and filed October 14, 1999), with Memorandum in Support (Docket No. 38) (which includes a Statement of Undisputed Material Facts and is supplemented by Attachments), Affidavit of Lucy Slusarski (Docket No. 39) (with Exhibit A) and Reply Memorandum (Docket No. 45, filed November 1, 1999) (which is supplemented by Attachments).

Also before the court is Plaintiff's Opposition to Defendant's 10/13/99 Motion for Summary Judgment (Docket No. 40, filed October 25, 1999), with Plaintiff's Response to Statement of Alleged Undisputed Material Facts (Docket No. 41), Plaintiff's Request for Oral Hearing (Docket No. 42), and Plaintiff's Memorandum of Law (Docket No. 43) (with Exhibits 1 and 2).

### II. Factual Background and Procedural History

#### A. Factual Background in General

Patricia A. Francis became an "insurance claims adjuster" for Sentry Insurance Co. in August 1995. For a substantial period of time before January 27, 1997, she continued in some type of employment relationship as insurance claims adjuster for Sentry. The nature and details of that relationship, however, are characterized by the parties in conflicting ways.

Plaintiffs assert that in a conversation, occurring on or about January 27, 1997, Cynthia White, allegedly acting within the scope of authority as an allegedly authorized agent of Sentry Insurance Co., told Patricia Francis that she "was permitted to take a previously-planned vacation starting February 6, 1997 and ending approximately 14 days later" and that on or about "February 4, 1997 Sentry sent a letter stating that Ms. Francis employment was terminated based on her failure to return to work." Docket No. 43, page 1.

As explained more fully in Part II. B, below, plaintiffs allege numerous claims, and Sentry asserts numerous defenses.

#### B. Procedural History

On or about March 25, 1998, plaintiffs Patricia A. Francis and Eric J. Francis commenced this civil action by a filing in a state court as Middlesex Superior Court Docket #: 98–01413J, alleging against Sentry Insurance Co., a Mutual Company, claims under an array of labels including deceit, fraud, negligent misrepresentation, breach of contract, promissory estoppel, detrimental reliance, and equitable estoppel.

On or about April 23, 1998, defendant filed a notice of removal to this court on grounds of diversity of citizenship (Docket

No. 1, filed April 23, 1999). On April 29, 1999, defendant filed in this court certified copies of the state court record (Docket No. 3 in this court). Among the documents identified in the state court record was a record of service in the state court proceeding on March 27, 1999.

On July 13, 1997, defendant filed Motion by Sentry Insurance Co. to Dismiss and for Summary Judgment (Docket No. 6), with Memorandum in Support (Docket No. 7) and Affidavit of Barbara Fuller (Docket No. 8).

After an assented-to extension of time, plaintiffs filed an Opposition (Docket No. 10, filed July 31, 1998), with Memorandum in Support (Docket No. 11).

With leave (Docket No. 12), Sentry filed a Reply Memorandum (Docket No. 13). In this document the following passages appear:

Francis' latter allegation—that Sentry did not state that the Handbook was intended to provide only guidance—is belied by Francis' own acknowledgment in her Opposition that Sentry states in the Handbook, under the page-one "**IMPORTANT LEGAL NOTICE**" section, the following:

The handbook is not intended to cover every condition that may arise during your employment at Sentry. If you would like more detailed information about the policies that follow, please contact your human resources representative. When reference is made to plan documents, insurance policies and coverages, the language of the official plan documents (available in human resources) applies.

Opposition at 2. It is also belied by Francis' own concession in her Opposition that the form which she signed upon receipt of the Handbook stated, "Your handbook has been written in a general way, to cover some of the highlights of Sentry's human resources policies." *See* Opposition at 2.

*Id.* at 5–6.

On November 2, 1998, the court issued a Memorandum and Procedural Order (Docket No. 14) notifying the parties that the court would treat Docket No. 6 as a motion for summary judgment subject to all the requirements of D.Mass LR 56.1, allowed each party until December 11, 1998, to file a further submission, and set a hearing and Case Management Conference for January 20, 1999.

Both sides filed further submissions, docketed as Docket Nos. 15–18.

The court issued a Memorandum and Order of January 11, 1999 (Docket No. 19), calling attention to concerns of the court and encouraging further submissions.

Both sides filed further submissions, docketed as Docket Nos. 20 and 21.

After the Case Management Conference and hearing of January 20, 1999, the court issued a Memorandum and Order granting in part and denying in part Docket No. 6. This Order (i) declared that remaining claims of plaintiffs would be dismissed unless plaintiffs filed on or before March 1, 1999, a motion for leave to amend the complaint along with the signed proposed amended complaint, and (ii) allowed response by Sentry if plaintiffs made such a filing.

On March 1, 1999, plaintiffs filed a motion for leave to file amended complaint (Docket No. 24).

On March 15, 1999, Sentry filed a Memorandum in Opposition (Docket No. 25) to the motion for leave to file amended complaint.

On April 1, 1999, the court issued a Memorandum and Order (Docket No. 27) allowing the motion for leave to file amended complaint and setting a Case Management Conference for May, 1999.

The Clerk filed the First Amended Complaint (Docket No. 26, filed April 1, 1999).

On April 13, 1999, defendant filed Motion by Sentry Insurance Co. to Dismiss First Amended Complaint (Docket No. 28), with Memorandum in Support (Docket No. 29)

On April 22, 1999, plaintiffs filed Opposition (Docket No. 30) with Memorandum (Docket No. 31), and thereafter the court allowed leave to Sentry to file a reply docketed as Docket No. 35.

The court gave notice (Docket No. 32) of rescheduling the May Case Management Conference, and that conference occurred on May 11, 1999.

Meanwhile, on May 7, 1999, the court issued a Memorandum and Order (Docket No. 33). This Order (i) allowed the motion to dismiss the contract claim and the promissory estoppel/reliance claims in Count II of the First Amended Complaint, (ii) allowed the motion to dismiss Count III, and (iii) denied dismissal of Count I and the equitable estoppel claim in Count II.

The court, in the Case Management Conference of May 11, 1999, did not act on Defendant's Reply Memorandum (Docket No. 35, filed May 11, entry date May 12, 1999). By margin order (endorsed on Docket No. 35), on May 14, 1999, the court treated Docket No. 35 as a motion for reconsideration and denied it for the reasons previously stated.

On October 14, 1999, defendant filed Motion by Sentry Insurance Co. for Summary Judgment (Docket No. 37), with Memorandum in Support (Docket No. 38) and Affidavit of Lucy Slusarski (Docket No. 39).

On October 25, 1999, plaintiffs filed Opposition (Docket No. 40), with Response to statement of alleged undisputed facts (Docket No. 41), request for oral hearing (Docket No. 42) and Memorandum (Docket No. 43).

### III.

Defendant's Statement of Undisputed Material Facts as follows:

1. Francis was hired by Sentry as an insurance claims adjuster in August, 1995. *See* Exhibit A, Deposition of Patricia A. Francis ("Francis Dep."), at 13–16.

2. On October 16, 1996, Francis underwent surgery due to intestinal adhesions. *Id.* at 22.

3. Francis admitted at deposition, without equivocation, that she was totally disabled and unable to work even on a part-time basis from October 16, 1996 until March 11, 1997. *Id.* at 61–65 and Francis Dep. Exhibit 11. Specifically, Francis testified:

Q: So it's correct, then, that you were able to return to work on a part-time basis only after March 11, '97, correct?

A: Yes.

Q: You were not able to work before then even on a part-time basis?

A: No.

Q: No, you were not?

A: No.

Q: I'm sorry, I need your testimony to be clear. You were not able to—

A: I was not able.

Q: And the reason you were not able to return to even part-time work prior to March 11, 1997, was the pain you were suffering, correct?

A: Yes.

*Id.* at 64–65. Francis also confirmed that her physician's written statement to the same effect was correct. *Id.* at 61–62, 64 and Francis Dep. Exhibit 11.

4. Francis testified that prior to departing on her February 6 through 25, 1997 vacation, she was told by her supervisor that of the two-week and four-day period, two weeks would be paid and four days would be unpaid. *Id.* at 55–56.

Docket No. 38 at 2–3.

Plaintiff's Response admits items 1, 2, and 4 and replies to item 3 as follows:

Objection as to description of the deposition testimony. Said testimony speaks for itself and is accurately attached by the moving party.

Docket No. 41 at 1.

Plaintiffs assert as Additional Material and Disputed Facts the following:

1. It is disputed as to why Ms. Francis was fired. Please see her Memorandum and Exhibit 1 thereto. Was she fired because she resigned, refused to return to work, did not provide medical documents, was not really ill, was really ill, or simply took too much time off?

2. The damages caused by the disciplinary firing and refusal to consider re-hiring Ms. Francis per Exhibit 2 in her Memorandum. Ms. Francis could not obtain new work immediately.

3. It is disputed whether Ms. Francis would have dragged herself to work if needed to keep her job per her Affidavit filed with this Motion.

4. Did plaintiff qualify for long term disability? Please see Affidavit.

*Id.*

## IV.

A key question that bears upon the court's deciding whether Sentry's latest motion for summary judgment should be allowed is the dispute over whether plaintiff was qualified for health benefits (i) on January 27, 1997, or (ii) on February 4, 1997, or (iii) on some particular date after February 4, 1997.

The answer to each of the several parts of this question may depend upon complex and interwoven legal-factual evaluative determinations. Added complexity arises from the fact that this core question may have more than three parts since the third of the subdivisions as listed above is indefinite about the number of particular dates after February 4, 1997 on which plaintiffs may assert that qualification of Patricia A. Francis for health benefits is genuinely at issue. The procedural history of this case shows a striking failure of the parties to focus their submissions in a way that could aid the court's consideration of this key question.

An example of the troubling aspects of the procedural history is plaintiff's argument that Ms. Francis reasonably relied on Ms. White's alleged statement "regarding a vacation starting on February 6, 1997." They assert that this claim of reliance "is not contradicted by the medical evidence" because a

physician's *suggestion* that Ms. Francis stay out of work from October 16, 1996 to March 11, 1997, which was not prepared until March of 1997, is not a mandatory injunction that she cannot attend work, even at a light duty schedule. Ms. Francis had a desk job and there was no heavy lifting. Had Ms. Francis known that she was going to be fired, she would have dragged herself to work or had someone take her to and from work in order to keep her employment. . . .

Docket No. 43 at 3.

The argument that an employee can "drag[ ] herself to work or ha[ve] someone take her to and from work" and be capable of performing an accommodating light-duty assignment while at work in those circumstances is a perversion of the adversary process. I cannot construe it as an effort of counsel to provide professionally responsible assistance to the court in understanding the issues before the court for decision.

I accept as credible an inference that plaintiffs' counsel and plaintiffs were offended by the passage in the Defendant's Reply Memorandum (Docket No. 13), quoted above in Part II.B, and especially by the word "belied" as it appeared in that document. Nevertheless, I conclude that being offended by an opposing contention challenging one's credibility is no excuse for making a caustic and accusatory argument in response. Making such an argument obstructs rather than aids the court's

effort to determine whether any genuine dispute of material fact exists in this case.

In view of the procedural history of this case, illustrated by the instance just given and summarized in Part II.B above, I find it appropriate to follow a pattern and practice adopted by the Court of Appeals for the First Circuit in *Hennessy v. City of Melrose,* 194 F.3d 237 (1st Cir.1999), wherein the appellant had "alleged myriad violations of his rights," at 244, and the Court of Appeals restricted its opinion "to the appellant's two most promising assertions," *id.* at 244. Here, after explaining a broader perspective on judicial reasoning and decisionmaking in Part V, I restrict Part VI of my opinion to the most promising assertions by each of the parties before me.

## V.

It is important to understand that when reasoning toward a judicial decision, a judge may theorize and may evaluate the most fundamental and pervasive of policy arguments as well as all other kinds of arguments about what the law is and what it should be. The judge may do so in the hope of making decisions clearer, easier to understand, and more accessible to reasoned challenge and defense in higher courts and at any other site for reasoned exchange of views about how a society committed to government under law can achieve its aims of liberty and justice.

But when a judge of a court in the American Legal System is in the decision mode, declaring a ruling or set of rulings the judge is making, the judge is no longer theorizing. The judge is ruling.

It is important to understand, also, that when a judge of a court in the American Legal System is engaged in judicial *review,* the nature of the decisions to be made, after whatever theorizing may occur in preparation for deciding, is different from the nature of decisions to be made when the court has plenary authority for initial decision of disputed issues of fact and law that govern outcomes on the merits. The decisions the judge declares when engaged in judicial *review* are not plenary initial decisions of law and facts, but review of decisions of others—either governmental agency decisionmakers or private decisionmakers outside government, as is commonly provided for in employee benefit plans under current law and practice in the United States.

## VI.

Defendant's second best argument focuses on admissions of the plaintiff, Patricia A. Francis, in her deposition testimony. As noted in Part III above, defendant quotes the following colloquy during defense counsel's interrogation during that deposition:

Q: So it's correct, then, that you were able to return to work on a part-time basis only after March 11, '97, correct?

A: Yes.

Q: You were not able to work before then even on a part-time basis?

A: No.

Q: No, you were not?

A: No.

Q: I'm sorry, I need your testimony to be clear. You were not able to—

A: I was not able.

Q: And the reason you were not able to return to even part-time work prior to March 11, 1997, was the pain you were suffering, correct?

A: Yes.

Exhibit 11 at 64–65.

Of course, this colloquy is admissible evidence. In order to succeed, however, in the argument for summary judgment on this basis, defendant must show not merely that this colloquy strongly supports a finding for defendant but that it compels such a finding in the sense that no reasonable finder of facts could find that the inference favorable to the defense is outweighed by conflicting inferences that

might reasonably be drawn from other admissible evidence before the court. Thus, if plaintiff has produced admissible evidence sufficient to support a contrary finding, and the issue is material to disposition, the matter must go to trial before a jury (or trial judge in a nonjury trial, functioning as finder of facts).

This line of reasoning leads to consideration of plaintiffs' most promising argument, to which I turn next. After that, I will turn to defendant's most promising argument, which is the defendant's response to plaintiff's most promising argument.

Plaintiffs appear to be arguing that, whatever the nature of their burden in responding to a motion for summary judgment may be, on their claim of detrimental reliance, they can meet their burden simply by having Patricia A. Francis assert, under oath, that she detrimentally relied on something Cynthia White said to her on January 27, 1997. All other aspects of plaintiffs' burden are satisfied, plaintiffs contend, by inferences a finder of fact could permissibly draw from circumstances and need not be supported by admissible evidence (i) of manifestations by a high-level representative of Sentry that Cynthia White was authorized to speak for Sentry on this matter, (ii) of precisely what employment relationship Patricia A. Francis had with Sentry on January 27, 1997, (iii) of precisely what are the requirements for health benefits for an insurance claims adjuster having an employment relationship like that Patricia A. Francis had with Sentry on January 27, 1997, and (iv) of precisely what Cynthia White said and how it related to the issue of qualification of Patricia A. Francis for health benefits.

One potentially fatal flaw in this argument is that the pertinent assertions in the affidavit of Patricia A. Francis are conclusions rather than admissible statements under oath of historical facts. Moreover, as to each of the items (i)–(iv), they are legal-factual conclusions rather than con-clusions about "basic" or "historical" facts, as those terms are commonly used in precedents bearing upon allocation to a jury (or to a trial judge as finder of facts) of responsibility for making a determination that affects disposition on the merits of a claim or defense.

Included among the precedents that counsel and the court will need to consider are several sets of precedents that bear on different but interrelated topics.

The first of these topics is the meaning of the phrases "basic facts" and "historical facts," in contrast with the less certain meaning attached to the word "facts" when it appears with no adjective before it. *See, e.g., United States v. Kaiser,* 363 U.S. 299, 304, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960) (factual inferences to be drawn from the "basic facts" were for the jury); *Thomas v. State of Arizona,* 356 U.S. 390, 393, 78 S.Ct. 885, 2 L.Ed.2d 863 (1958) ("No encroachment of the traditional jury function results, for the issue of coercion, unlike the basic facts on which coercion is ascertained, involves the application of constitutional standards of fundamental fairness under the Fourteenth Amendment."); *cf. United States v. Rule Industries, Inc.,* 878 F.2d 535 (1st Cir.1989) ("A jury, however, is sometimes called on to determine more than the underlying, or 'historical,' facts. It may also be called on to decide 'questions of application,' although, as commentators have pointed out, it is not so easy to articulate a 'theoretical difference between questions of application that are left to the jury and questions of application that go to the judge[;] . . . the division of jurisdiction is largely a matter of precedent' . . . . In a variety of cases decided by this court, we have held that, even where the historical facts were not in dispute, the 'evaluative application[ ] of legal standards . . . to the facts' was a jury question.") (internal citations omitted).

The second of the interrelated topics is who is "better positioned" to decide disputes about "facts" of a kind that are not

alone "basic" or "historical" in nature. *See, e.g., Thompson v. Keohane,* 516 U.S. 99, 112–13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (in determining that independent review was appropriate in the context of decisions about what constituted "custody," Court held that trial court was better positioned to weigh credibility of testimony to determine "historical facts," but that reviewing court may independently consider the application of controlling legal standard to facts); *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 388, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) ("[J]udges, not juries, are the better suited to find the acquired meaning of patent terms."); *Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) ("[T]he fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question."); *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 503, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

The third of the interrelated topics is the distinction between "conclusions" and "statements of fact" in the precedents concerning admissibility of evidence for consideration by a finder of facts (jury, or trial judge in a nonjury case). *See, e.g., Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997) (court held that " 'conclusory allegations, improbable inferences, and unsupported speculation' will not suffice" to withstand a motion for summary judgment) (*quoting Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).

The fourth of the interrelated topics is the scope and nature of a trial court's decisional function in cases involving judicial review. *See, e.g., Recupero v. New England Tel. and Tel. Co.,* 118 F.3d 820 (1st Cir.1997).

■ Directed by not entirely consistent guidelines manifested in all this array of precedents, I conclude that in the present case I must consider (and I hope with the assistance of counsel for the opposing parties before me) two discrete elements of a claim of reliance. First, a plaintiff must demonstrate that she behaved in a particular manner in response to a representation of defendant, which behavior differed from the behavior she would have exhibited absent that specific representation or one closely similar to it. Second, a plaintiff must demonstrate that it was reasonable for her to alter her behavior in response the specific representation she has proved, or one closely similar to it. Defendant here focuses its arguments on the first of these two elements.

■ Defendant argues that summary judgment should be granted in its favor because Patricia A. Francis' behavior would not have differed had Cynthia White not "approved" Patricia A. Francis' vacation. In support of this argument, defendant proffers the excerpts of the deposition of Patricia A. Francis quoted above in Part III.

Although several of the statements concerning reliance from the Affidavit of Patricia A. Francis are conclusions that are not admissible evidence for the reasons stated above, her statement that she would have come to work had she known that she would be fired is admissible.

As noted in the Memorandum and Order of May 7, 1999 (Docket No. 33), Patricia A. Francis' statement that she was "disabled" and unable to return to work even on a part-time basis in the ordinary course is not necessarily in conflict with the asserted proposition that Patricia A. Francis would have attempted to work, notwithstanding the pain and limitations of her disability, had she known that she would be terminated for not returning to work at a particular time. In light of the tension, not yet resolved, between these two competing propositions, I cannot say that plaintiffs' claim of reliance fails on this ground as a matter of law.

Defendant's most promising argument concerns the scope of damages available to

plaintiffs, assuming *arguendo* that plaintiffs have succeeded in demonstrating reasonable reliance on the representations of defendant's agent. Defendant argues that because Patricia A. Francis was an at-will employee, she could be fired for any reason (not precluded by law) or no reason at all. After the twelve-week leave guaranteed by the federal Family and Medical Leave Act had expired, defendant was able to fire Patricia A. Francis at any time. Defendant argues that even if Cynthia White's representations created an obligation to continue to employ Patricia A. Francis until she returned from her vacation, defendant was free to fire her immediately upon her return. Defendant argues that plaintiffs' recovery should be limited, therefore, to Patricia A. Francis' pro-rated salary for those two weeks of her vacation that she had accrued as paid vacation days.

Plaintiffs allege that even if plaintiffs are, by a court ruling or applicable law, limited in the relief available to them, plaintiffs have nevertheless alleged valid grounds for compensatory damages for deprivation of benefits beyond the period of vacation. In her Affidavit, Patricia A. Francis alleges that she was denied medical benefits for health care services provided on January 7, 1997. She alleges generally that she accrued $5,000.00 of medical bills, although she does not itemize those bills. Plaintiff calls attention to a document entitled Request for Continuation of Benefits (Docket No. 15, Exhibit 2) that appears to be a request, dated February 4, 1997, by Anne McCauley to stop health insurance coverage for Patricia A. Francis, effective December 31, 1996. The determination of the issues of Patricia A. Francis' qualification for or entitlement to health benefits, and at what point she was no longer qualified for or entitled to health benefits, is central to the resolution of this matter, and the submissions of the parties do not provide a clear basis for my reaching a reasoned decision.

As noted in Part III above, plaintiffs identify Patricia A. Francis' qualification for long-term disability benefits as a disputed issue of material fact. Docket No. 41 at 1. In defendant's Reply Memorandum (Docket No. 45), however, defendant attached a letter dated April 18, 1997, addressed to Patricia Francis, from Diane Kranig, a Disability Service Representative at Sentry Life Insurance Company (Exhibit A, Deposition Exhibit 14). This letter states that Patricia Francis' claim for long-term disability benefits had been reviewed and was denied. Defendant also attached a letter dated May 27, 1997, from Patricia Francis to Diane Kranig requesting a reevaluation of the decision to deny long-term disability benefits (Exhibit A, Deposition Exhibit 15). Defendant argues that Patricia A. Francis' termination did not affect her qualification for long-term disability benefits. Whether or not her termination had any effect on her qualification for long-term disability benefits, plaintiffs must appeal any decision on the long-term disability plan through the administrative process provided for by the plan. Plaintiffs may not short-circuit the process by seeking initial plenary determination of the contested issue in this court.

Thus, if plaintiffs prevail on the claim that Patricia A. Francis was entitled to an administrative appeal that was denied, the remedy this court will order is an opportunity to apply again promptly for that administrative appeal. She cannot forego that opportunity and assert successfully before this court that her choice to forego that opportunity gives her a right to plenary initial determination of the contested issue in this court.

## ORDER

For the foregoing reasons, it is hereby ORDERED:

(1) Defendant's Motion for Summary Judgment (Docket No. 37, dated October 13, 1999, and filed October 14, 1999) is DENIED;

(2) Unless plaintiffs formally initiate an administrative appeal, as allowed by the foregoing rulings of this court, on or before December 15, 1999, a Final Pretrial Conference will be held at 4:00 p.m. on January 11, 2000, and jury selection is scheduled to begin in this matter on February 7, 2000, at 9 a.m.