Jose MEDINA–MUNOZ, etc., et al.,
Plaintiffs, Appellants,

v.

R.J. REYNOLDS TOBACCO
COMPANY, Defendant,
Appellee.

No. 89–1734.

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1990.

Decided Feb. 15, 1990.

A. Santiago–Villalonga, with whom Nachman & Fernandez–Sein, Santurce, P.R., was on brief, for plaintiffs, appellants.

Lidia Gonzalez, with whom Donald M. Hall and McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, Hato Rey, P.R., were on brief, for defendant, appellee.

Before BREYER and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

SELYA, Circuit Judge.

In May 1986, plaintiff-appellant Jose Medina Munoz (Medina)[1] was cashiered by his employer, defendant-appellee R.J. Reynolds Tobacco Company (RJR). Alleging that he had been forsaken because of his age, Medina sued. This appeal follows the entry of judgment below in RJR's favor.

## I. BACKGROUND

Medina was hired by appellee in 1980 as an executive. He was then 47 years old. He later became a regional sales manager, supervising district managers working out of RJR's Puerto Rico branch as well as the sales representatives who reported to them. At times, his responsibilities included work on key accounts and in special programs.

Plaintiff's tenure was checkered. The record contains evaluations ranging from good to indifferent to poor. Medina seems fairly consistently to have fulfilled his sales quotas, but to have frequently displayed unacceptable work habits and a certain unwillingness to conform to supervisors' recommendations. His personnel file also reflects problems such as tardiness, failure to meet deadlines, and an apparent distaste

for field supervision duties. His work-related difficulties and lack of sequacity appear to have increased with the passage of time. In 1985, the firm's personnel manager directed Medina to desist from challenging his immediate superior's authority and warned him about his hostile, negative attitude.

Both in the workplace and in the courtroom, Medina labored valiantly to explain away these seeming shortcomings. He claimed that his superior, Aguayo, disliked him and distorted the facts. Yet, when Aguayo was terminated in late 1985 and Perez took charge, the situation went from bad to worse. During a performance review in April 1986, Medina, upset by Perez's criticism, shouted and used obscene language. Perez suspended him on the spot. Exactly one month later, Medina was discharged for misconduct and insubordination. This suit ensued.

■ Pretrial discovery lasted for roughly two years. Eventually, RJR sought— and secured—a summary judgment in its favor. We affirm. We do so, however, on a somewhat different basis than was sculpted by the court below, mindful that, in reviewing summary judgments as elsewhere, a court of appeals is not limited to the district court's reasoning, but may affirm on any independently sufficient ground. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49 (1st Cir.1990); *Polyplastics, Inc. v. Transconex, Inc.*, 827 F.2d 859, 860–61 (1st Cir.1987); *Chongris v. Board of Appeals*, 811 F.2d 36, 37 n. 1 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).

## II. THE SUMMARY JUDGMENT STANDARD

■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

1. The conjugal partnership between plaintiff and his wife was also denominated as a party plaintiff. The partnership's claim is purely derivative. Because nothing substantive turns on

the point, we treat the appeal as if Medina were the sole plaintiff. Our decision, of course, is nevertheless conclusive upon the conjugal partnership.

entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Not every factual controversy bars a litigant's access to the Rule 56 anodyne:

> [T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir. 1989); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). A "genuine" issue is one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989), would permit a rational factfinder to resolve the issue in favor of either party. *See Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511; *Hahn*, 523 F.2d at 464.

█ The test for summary judgment is steeped in reality. Although the remedy must be withheld if material facts are authentically disputed, there is a burden of production: the party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e). We have interpreted Rule 56 to mean that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." *Mack*, 871 F.2d at 181, *see also Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1106 (1st Cir.1989). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50,

106 S.Ct. at 2511 (citations omitted). Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. *See Rossy v. Roche Products, Inc.*, 880 F.2d 621, 624 (1st Cir. 1989); *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 109–10 (1st Cir.1988).

## III. THE ADEA

In this appeal, the outcome depends on whether plaintiff has crossed the summary judgment threshold in respect to his claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*[2] Medina produced no direct evidence of discrimination. He must, therefore, rely on the burden-shifting framework characteristic of cases involving circumstantial proof of discrimination. *See Menard v. First Security Services Corp.*, 848 F.2d 281, 287–88 (1st Cir.1988); *Young v. General Foods Corp.*, 840 F.2d 825, 828–29 (11th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *see generally Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). The manner in which this framework fits an ADEA case is by now well defined.

█ Plaintiff can make out a prima facie case by showing that he was over the age of 40 (and thus within the protected group); that his work was sufficient to meet his employer's legitimate expectations; and that he was discharged and replaced by someone with roughly similar qualifications. *See, e.g., Hebert*, 872 F.2d at 1110; *Freeman v. Package Machinery*

---

**2.** In addition to an ADEA count, plaintiff's complaint also contained pendent claims under Puerto Rico law (once again based on age discrimination). The district court granted summary judgment on all counts. In his appellate brief, plaintiff made no effort to differentiate the nonfederal claims or to suggest that a divergent result might obtain in respect thereto, but argued only the ADEA claim. Indeed, he mentioned the nonfederal claims but once, in passing, describing them as "similar" to the ADEA claim. In line with "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990), we abjure separate analysis of the claims asserted under Commonwealth law.

*Co.*, 865 F.2d 1331, 1335 (1st Cir.1988); *Menzel v. Western Auto Supply Co.*, 848 F.2d 327, 328 (1st Cir.1988). Doing so "put[s] the ball in defendant's court." *Freeman*, 865 F.2d at 1335. The burden of persuasion remains with the employee, but the burden of production shifts to the employer, who must then articulate—not necessarily prove—some valid, nondiscriminatory reason for the dismissal. *See Hebert*, 872 F.2d at 1111; *Menard*, 848 F.2d at 285; *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011 (1st Cir.1979). So long as the employer proffers such a reason, the inference raised by plaintiff's prima facie case vanishes. *Freeman*, 865 F.2d at 1336; *Menard*, 848 F.2d at 287. In the final round of shifting burdens, it is up to plaintiff, unassisted by the original presumption, to show that the employer's stated reason "was but a pretext for age discrimination." *Freeman*, 865 F.2d at 1336; *see also Menzel*, 848 F.2d at 328–29; *Menard*, 848 F.2d at 287. To achieve this plateau, an ADEA plaintiff must do more than simply refute or cast doubt on the company's rationale for the adverse action. The plaintiff must also show a discriminatory animus based on age. *See Menard*, 848 F.2d at 287 (pivotal "issue is whether [employer] fired [plaintiff] because of his age"); *Dea v. Look*, 810 F.2d 12, 15 (1st Cir.1987) (similar); *see also Keyes v. Secretary of the Navy*, 853 F.2d 1016, 1026 (1st Cir.1988) (Title VII); *White v. Vathally*, 732 F.2d 1037, 1042–43 (1st Cir.) (Title VII), *cert. denied*, 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984).

We have often discussed the interplay between the *Burdine* burden-shifting framework for proving age discrimination and the imperatives of Rule 56. *See, e.g., Menzel*, 848 F.2d at 328–30; *Menard*, 848 F.2d at 284–85; *Dea*, 810 F.2d at 14–16. Generally speaking, the principles discussed above abide at the summary judgment stage. Most pertinent for our purposes, it remains true that when, as here, the employer has articulated a presumptively legitimate reason for discharging an employee, the latter must elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: age discrimination. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91

L.Ed.2d 265 (1986) (summary judgment opponent who bears burden of proof on an issue must reliably demonstrate existence of genuine dispute as to material facts); *Garside*, 895 F.2d at 48 (similar); Fed.R. Civ.P. 56(e).

## IV. APPLYING THE RULES

The district court granted summary judgment because plaintiff failed to show that his job performance was up to RJR's legitimate expectations. In the Rule 56 environment, we find the rationale troublesome.[3] Yet, assuming for the sake of argument that the district court was wrong and Medina made out his prima facie case, the bottom line would be unaffected. RJR at the very least articulated, and amplitudinously documented, a valid, nondiscriminatory set of reasons—misconduct and insubordination—for dismissing plaintiff. In the face of that proffer, Medina argues that he put forward enough evidence to create a litigable question as to whether the stated reasons were a ruse. If that is so, it is only half the battle; the other half was lost for he offered no colorable evidence to show that the reasons, if pretextual, were pretexts *for age discrimination.* Put another way, even if Medina fashioned a triable issue as to pretext, there was, in the *Anderson* phrase, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 no "significantly probative" evidence to show that the pretext masked age discrimination.

Plaintiff cites two pieces of evidence—and only two—which he says fill this lacuna. First, he states that Perez, prior to becoming sales director, mentioned "that the sales personnel was [sic] getting too old," and that this was a "problem" for the company. But as Medina acknowledged, Perez's comments were in connection with a study conducted to analyze the sales force's productivity. The study report, dated December 17, 1985 and entitled "Productivity Analysis", is in the record. It is nothing more than a factbound recapitulation of the performance of 88 RJR sales representatives—persons several rungs lower on the corporate ladder than Medina. It is too large a leap to apply the report's conclusions to managers—let alone to attempt to draw an inference of discriminatory intent toward those in managerial posi-

---

**3.** The record evidence as to job performance, while heavily weighted toward defendant's view, was nevertheless mixed. Strong evidence is not necessarily uncontradicted evidence; and at the summary judgment stage, the district judge can-

not "superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the [facts of] record." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987).

tions.[4] *Cf., e.g., Young,* 840 F.2d at 830–31. In the present context, the compilation seems a mere heuristic. We are unable to agree, therefore, that the Productivity Analysis, or Perez's remarks about it, can sustain a reasonable inference of age discrimination in this litigation.[5]

Appellant's other prop is wobblier still. He contends that Aguayo, while director of sales, often addressed him as "el viejo" (the old man). The short of the matter is that Aguayo had himself been fired several months before plaintiff was cashiered. The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case. *See LaMontagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1412 (7th Cir.1984); *Simmons v. McGuffey Nursing Home, Inc.,* 619 F.2d 369, 371 (5th Cir.1980). And there is simply no support for the notion that whatever prejudices Aguayo might have harbored lingered within the company for months after his compelled departure.[6]

■ Particularly in a case like this one, where the employee's evidence of pretext is tenuous, these fragmentary tendrils do not suffice, without more, to prove that RJR's dismissal of Medina was motivated by age discrimination. Here, there is no "more"— no statistical evidence, no demonstration of discriminatory corporate policies, no instances of disparate treatment, no invidious pattern of age-related discharges or forced early retirements. A factfinder would be left to guess at the reasons behind the pretext. Even if it could be inferred from the pretext alone that RJR acted "arbitrarily or with ill will," summary judgment would not be forestalled. *See Gray v. New England Telephone and Telegraph Co.,* 792 F.2d 251, 255 (1st Cir.1986). As we have said, "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so

long as the decision to fire does not stem from the person's age."

*Freeman,* 865 F.2d at 1341.

## IV. CONCLUSION

We need go no further. Plaintiff had the burden of showing that there was "sufficient evidence supporting the claimed factual dispute" to require a jury to choose between "the parties' differing versions of the truth at trial." *Hahn,* 523 F.2d at 464 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). He failed to do so. Because courts should not encourage long, expensive trials merely to discover whether any evidence exists to support a claim, we decline to disturb the entry of summary judgment.

*Affirmed.*

---

**4.** Despite Medina's contention that Perez wanted to clean house and recruit a younger sales force, he offered no proof that any older salesmen were actually fired, demoted, or transferred. This circumstance further undermines the claim that the report should be accorded probative force. *See Carter v. City of Miami,* 870 F.2d 578, 584–85 (11th Cir.1989); *see also Menard,* 848 F.2d at 289 (evidence must show "some meaningful disparity" in treatment of workers based on age).

**5.** Medina's garbled reference to two pages of figures prepared by Perez, entitled "1984 Value

Analysis," is so far off any conceivable mark that we need not dignify it by elaboration.

**6.** Moreover, Senati, a veteran coworker, supplied an affidavit to the effect that Aguayo was a "friendly, jovial" person who habitually "address[ed] his employees and peers using nicknames such as 'viejo,' 'vieja' [old lady], 'flaco' [skinny], 'gordo' [fatso]" and similar words of endearment. Senati claimed that Aguayo "used such terms ... as a way of showing friendship." Medina has not contradicted Senati's account.