<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 96-1643

                     SIDNEY ABBOTT, ET AL.,

                     Plaintiffs, Appellees,

                               v.

                    RANDON BRAGDON, D.M.D.,

                     Defendant, Appellant.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

                             Before

                     Selya, Circuit Judge,
                                
                  Cyr, Senior Circuit Judge,
                                
                  and Stahl, Circuit Judge.
                                

    John W. McCarthy, with whom Brent A. Singer and Rudman &
Winchell, LLC, were on brief, for defendant.
    Stephen C. Whiting and The Whiting Law Firm, P.A. on brief for  
Cary Savitch, M.D., amicus curiae.
    Scott Somerville on brief for Dentists for Preservation of
Professional Judgment, amicus curiae.
    Robert J. Masini and Diver, Grach, Quade & Masini on brief for
American Association of Forensic Dentists, amicus curiae.
    Bennett H. Klein, with whom Gay and Lesbian Advocates &
Defenders, David G. Webbert, Johnson & Webbert, LLP, and Wendy E.
Parmet were on brief, for plaintiff Sidney Abbott.
    John E. Carnes, Commission Counsel, on consolidated brief for
intervenor-plaintiff Maine Human Rights Commission.
    Thomas E. Chandler, Attorney, U.S. Dept. of Justice, with whom
Bill Lann Lee, Acting Assistant Attorney General, and Jessica
Dunsay Silver, Attorney, were on brief, for United States of
America, amicus curiae.
    Peter M. Sfikas, Mark S. Rubin, Kathleen Todd, Jill A.
Wolowitz, Scott M. Mendel, Bell, Boyd & Lloyd and Patrick J.
Quinlan on brief for American Dental Ass'n, amicus curiae.

December 29, 1998

                                
                                

 SELYA, Circuit Judge.  This case involves a claim of
disability-based discrimination brought by an asymptomatic HIV-
positive individual, Sidney Abbott, against Randon Bragdon, a
dentist who refused to fill Ms. Abbott's cavity in his office.  The
district court found Ms. Abbott's case compelling and granted
summary judgment in her favor.  See Abbott v. Bragdon, 912 F. Supp.
580 (D. Me. 1995) (Abbott I).  We affirmed, albeit on somewhat
different reasoning.  See Abbott v. Bragdon, 107 F.3d 934 (1st Cir.
1997) (Abbott II).  The Supreme Court affirmed our decision in
substantial part, but remanded with instructions that we reexamine
several pieces of evidence.  See Bragdon v. Abbott, 118 S. Ct. 2196
(1998) (Abbott III).  We ordered supplemental briefing, entertained
a new round of oral argument, and now reaffirm the district court's
entry of summary judgment.
                               I
 We limned the pertinent facts in our earlier opinion, seeAbbott II, 107 F.3d at 937-38, and it would be pleonastic to
rehearse them here.  To lend context, it suffices to remind the
reader that Ms. Abbott, who was infected with the Human
Immunodeficiency Virus (HIV), went to Dr. Bragdon's Bangor, Maine
office for a dental appointment in September 1994; that she was
then in the asymptomatic phase of the disease and so informed the
dentist; and that, after Dr. Bragdon discovered a cavity, he
refused to fill it in his office.  Ms. Abbott sued, claiming
violations of the Americans With Disabilities Act (the ADA), 42
U.S.C.  12182 (1994), and the Maine Human Rights Act, 5 Me. Rev.
Stat. Ann. tit. 5,  4592 (West Supp. 1998).
    The earlier phases of this litigation established that
asymptomatic HIV constitutes a disability under the ADA.  SeeAbbott III, 118 S. Ct. at 2207 (aff'g Abbott II, 107 F.3d at 942).  
The sole remaining question is whether performance of the cavity-
filling procedure posed a "direct threat" to others and thereby
came within an exception to the ADA's broad prohibition against
discrimination.  See Abbott II, 107 F.3d at 943; see also 42 U.S.C.
12182(b)(3) (stating the exception and defining a direct threat
under the ADA as "a significant risk to the health or safety of
others that cannot be eliminated by a modification of policies,
practices, or procedures or by the provision of auxiliary aids or
services").
    In the earlier appeal, our rejection of Dr. Bragdon's
direct threat defense relied in part on our reading of (i) the 1993
Dentistry Guidelines (the Guidelines) formulated by the Centers for
Disease Control (CDC), and (ii) the Policy on AIDS, HIV Infection
and the Practice of Dentistry (the Policy) propounded by the
American Dental Association (the Association).  See Abbott II, 107
F.3d at 945-46.  Each of these documents indicated to us that the
use of so-called "universal precautions" would render the risk of
performing the cavity-filling procedure in a dental office
insignificant.  See id.  We also noted the absence of a trialworthy
showing by Dr. Bragdon as to any direct threat.  See id. at 946-48.  
The Supreme Court remanded to permit a reevaluation of the evidence
on this issue, and, in particular, a reexamination of the
Guidelines and the Policy.  See Abbott III, 118 S. Ct. at 2211-13.  
In doing so, the Court took pains to explain that its disposition
did not debar us from again reaching the same result.  See id. at
2213.
                               II
    In compliance with the Court's directive, we have
reexamined the evidence to determine whether summary judgment was
warranted.  In order to reverse our course, we would have to find,
contrary to our original intuition, either that (i) Ms. Abbott did
not merit judgment as a matter of law even in the absence of
disputed facts, or (ii) that Dr. Bragdon had submitted sufficient
evidence to create a genuine issue of material fact as to his
direct threat defense.  In our reexamination, we apply conventional
summary judgment jurisprudence, drawing all reasonable factual
inferences in favor of Dr. Bragdon (as the party opposing brevisdisposition).  See Abbott II, 107 F.3d at 938 (citing Smith v. F.W.
Morse & Co., 76 F.3d 413, 428 (1st Cir. 1996)).  Despite the
leniency of this approach, we do not indulge "conclusory
allegations, improbable inferences, and unsupported speculation."  
Medina-Muoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.
1990).
                   A.  Ms. Abbott's Evidence.
    The Supreme Court raised questions regarding whether the
Guidelines, which state that use of the universal precautions
therein described "should reduce the risk of disease transmission
in the dental environment," necessarily imply that the reduction of
risk would be to a level below that required to show direct threat.  
Abbott III, 118 S. Ct. at 2211 (quoting Guidelines).  We have
reconsidered this point.
    The CDC did not write the 1993 Guidelines in a vacuum,
but, rather, updated earlier versions issued in 1986 and 1987,
respectively.  The 1986 text calls the universal precautions
"effective for preventing hepatitis B, acquired immunodeficiency
syndrome, and other infectious diseases caused by bloodborne
viruses."  The 1987 edition explains that use of the universal
precautions eliminates the need for additional precautions that the
CDC formerly had advocated for handling blood and other bodily
fluids known or suspected to be infected with bloodborne pathogens.  
Neither the parties nor any of the amici have suggested that the
1993 rewrite was intended to retreat from these earlier risk
assessments, and we find no support for such a position in the
Guidelines' text.  Thus, we have again determined that the
Guidelines are competent evidence that public health authorities
considered treatment of the kind that Ms. Abbott required to be
safe, if undertaken using universal precautions.
    Second, the Court questioned the appropriate weight to
accord the Policy, expressing concern that the Policy might be
based in whole or in part on the Association's view of dentists'
ethical obligations, rather than on a pure scientific assessment.  
See Abbott III, 118 S. Ct. at 2211-12.  The supplemental briefing
that we requested yielded a cornucopia of information regarding the
process by which the Policy was assembled.  We briefly recount the
undisputed facts.
    The Association formulates scientific and ethical
policies by separate procedures, drawing on different member groups
and different staff complements.  The Association's Council on
Scientific Affairs, comprised of 17 dentists (most of whom hold
advanced dentistry degrees), together with a staff of over 20
professional experts and consultants, drafted the Policy at issue
here.  By contrast, ethical policies are drafted by the Council on
Ethics, a wholly separate body.  Although the Association's House
of Delegates must approve policies drafted by either council, we
think that the origins of the Policy satisfy any doubts regarding
its scientific foundation.
    For these reasons, we are confident that we appropriately
relied on the Guidelines and the Policy.  Moreover, as the Supreme
Court acknowledged, see id. at 2212, these two pieces of evidence
represent only a fraction of the proof advanced to support Ms.
Abbott's motion.  For example, she proffered the opinions of
several prominent experts to the effect that, in 1994, the cavity-
filling procedure could have been performed safely in a private
dental office, as well as proof that no public health authority
theretofore had issued warnings to health care providers
disfavoring this type of treatment for asymptomatic HIV-positive
patients.  These materials, in and of themselves, likely suffice to
prove Ms. Abbott's point.  Thus, we again conclude, after due
reevaluation, that Ms. Abbott served a properly documented motion
for summary judgment.
                  B.  Dr. Bragdon's Evidence.
    We next reconsider whether Dr. Bragdon offered sufficient
proof of direct threat to create a genuine issue of material fact
and thus avoid the entry of summary judgment.  In Abbott II, we
canvassed eight items of evidence adduced by Dr. Bragdon in an
effort to demonstrate a genuine issue of material fact.  See Abbott
II, 107 F.3d at 946-48.  The Supreme Court suggested that one such
piece of evidence   the seven cases that the CDC considered
"possible" HIV patient-to-dental worker transmissions   should be
reexamined.  See Abbott III, 118 S. Ct. at 2212.
    The Court's concern revolved around how the word
"possible" was understood in this context at the relevant time.  To
frame the issue, the Court noted that the CDC marks an HIV case as
a "possible" occupational transmission if a stricken worker, who
had no other demonstrated opportunity for infection, simply failed
to present himself for testing after being exposed to the virus at
work.  See id.  The Court speculated that if this definition of
"possible" was not available in September 1994, the existence of
seven "possible" cases "might have provided some, albeit not
necessarily sufficient, support for [Dr. Bragdon's] position."  Id.  
In other words, if a dentist knew of seven "possible" occupational
transmissions to dental workers without understanding that
"possible" meant no more than that the CDC could not determine
whether workers were infected occupationally, he might reasonably
regard the risk of treating an HIV-infected patient to be
significant.
    Upon reexamination of the record, we find that the CDC's
definition of the word "possible," as used here, had been made
public during the relevant period.  The record contains two
scientific articles published before Ms. Abbott entered Dr.
Bragdon's office which explained this definition.  See Louise J.  
Short & David M. Bell, Risk of Occupational Infection With Blood-
Borne Pathogens in Operating and Delivery Room Settings, 21 Am. J.
Infection Control 343, 345 (1993); John A. Molinari, HIV, Health
Care Workers and Patients:  How to Ensure Safety in the Dental
Office, 124 J. Am. Dental Ass'n 51, 51-52 (1993).  Since an
objective standard pertains here, see Abbott III, 118 S. Ct. at
2211; Abbott II, 107 F.3d at 944, the existence of the list of
seven "possible" cases does not create a genuine issue of material
fact as to direct threat.
    In his supplemental briefing and oral argument, Dr.
Bragdon has drawn our attention again to the CDC's report of 42
documented cases of occupational transmission of HIV to health-care
workers (none of whom were dental workers).  He repeats his
argument that, because dental workers are subject to dangers
similar to those faced by other health-care workers, these cases
can be extrapolated to create an issue of fact as to the degree of
risk to dental workers in September 1994.  We previously held that
this evidence was insufficient without a documented showing that
the risks to dentists and other health-care workers are comparable,
see Abbott II, 107 F.3d at 947, and the appellant offers us no
cogent reason to change our view.  The Supreme Court did not
question our position on this front, and Dr. Bragdon points to no
record support that we previously might have overlooked.
    Our assessment of Dr. Bragdon's, and his amici's, other
reprised arguments similarly remains unchanged.  Each piece of
evidence to which they direct us is still "too speculative or too
tangential (or, in some instances, both) to create a genuine issue
of material fact."  Id. at 948.
                              III
    We need go no further.  Upon reflection, we again find
that Dr. Bragdon did not submit evidence to the district court
demonstrating a genuine issue of material fact on the direct threat
issue.  Absent such a showing, the district court appropriately
entered summary judgment in favor of Ms. Abbott.  In espousing that
view, we emphasize the case-specific nature of our determination.  
Our disposition is confined to the facts of record here (as they
were presented in the nisi prius court).  The state of scientific
knowledge concerning this disease is evolving, and we caution
future courts to consider carefully whether future litigants have
been able, through scientific advances, more complete research, or
special circumstances, to present facts and arguments warranting a
different decision.

Affirmed.

</body>

</html>