**HOULTON BAND OF MALISEET INDIANS, et al., Plaintiffs,**

v.

**TOWN OF HOULTON, Defendant.**

No. Civ. 99–CV–202–B.

United States District Court, D. Maine.

Aug. 22, 2000.

Gregory P. Dorr, Farrell, Rosenblatt & Russell, Bangor, ME, for Houlton Band of Maliseet Indians, Houlton Band of Maliseet Indians Tribal Housing Authority, plaintiffs.

Daniel R. Nelson, Severson, Hand, & Nelson, Houlton, ME, for Town of Houlton, defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This case involves a dispute over the amount of payments in lieu of taxes ("PILOTs") that Plaintiffs, the Houlton Band of Maliseet Indians ("the Band") and the Houlton Band of Maliseet Indians Tribal Housing Authority ("the Housing Authority" or "the Authority"), owe to Defendant, the Town of Houlton ("the Town"), for a parcel of land known as the "Longstaff" parcel. Specifically, the parties dispute whether or not the Band must make PILOTs on the improvements (i.e. buildings) that have been built on this land. In Count I, Plaintiffs seek a declaratory judgment providing that the Band and the Authority have properly computed their PILOTs for 1992 through 1998, that the improvements that the Authority has made to the Band's land are exempt from taxation, and that the Town should no longer include such improvements when making its "assessed value" determinations. Plaintiffs also requests that the Court declare the formula that the Band and the Authority should use when calculating the

PILOTs and order all the parties to use that formula for future PILOTs.[1] In a counterclaim, the Town sues for $458,471.31 for past PILOTs it claims are due.[2] Plaintiffs filed for summary judgment on Count I, and the Town responded by filing for summary judgment for the money it claims is due. For the following reasons, the Court **GRANTS** Plaintiffs' motion for summary judgment on Count I in part, but declines to declare the amount of the PILOTs that they owe or the formula for the PILOT that the parties should use in the future. The Court **DISMISSES** the Town's motion without prejudice.

## STANDARD

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *See Fed.R.Civ.P.* 56(c). Once the moving party has come forward identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" which "it believes demonstrate the absence of a genuine issue of material fact," the adverse party may avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,*

904 F.2d 112, 115 (1st Cir.1990). The court will not, however, pay heed to "conclusory allegations, improbable inferences [or] unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). The role of the trial judge at the summary judgment stage "is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## BACKGROUND[3]

In 1996, the United States District Court for the District of Maine found that the land in dispute was trust land held by the United States for the purpose of providing it to the Band. *See Houlton Band of Maliseet Indians v. Town of Houlton,* 950 F.Supp. 408 (D.Me.1996) (Brody, D.J.) (*Houlton I* ). Under *30 M.R.S.A. § 6205– A(1)(C),* the State of Maine approved the acquisition of the land by the Secretary of the Interior on behalf of the Band, provided that no land within a particular town was acquired without the approval of that town. *See id.* at 410–11. On December 14, 1987, the Town of Houlton made its approval subject to the Band meeting a host of conditions. *See id.* at 411. One of those conditions required that the Band make PILOTs on all trust land and "any improvements thereon now existing or hereinafter arising." Defendant's Statement of Material Facts ("DSMF") (Docket No. 13) ¶ 1; Affidavit of Cathy O'Leary ¶¶ 9, 12, and Ex. D (Attached to Docket No. 12).[4]

1. The Band, in Count II of its complaint, brings a claim for violation of the Federal Fair Housing Act that is not subject to this order.

2. This figure increased from $388,261.70 as of November 1, 1999, the date on which the Town filed its counterclaim, to $458,471.31 on March 20, 2000, the date on which the Town filed its motion for summary judgment.

3. The Town failed to respond to the Plaintiffs' Statement of Material Facts in accordance

with Local Rule 56(c). Therefore, to the extent that the propositions of fact in the Plaintiffs' Statement of Material Facts are supported by references to record citations, they are deemed to be admitted pursuant to Local Rule 56(e).

4. Although the Town did not file a response to the Plaintiffs' Statement of Material Facts, it did file one, albeit one that was not in full compliance with Local Rule 56, with its own motion for summary judgment. Although

In *Houlton I*, the Town had disputed that the land was in fact trust land, in part because the Band never alleged to the court that it had agreed to the conditions that the Town had required of the Band. *Houlton I*, 950 F.Supp. at 411. The court rejected the Town's claim that the land was not trust land, pointing out that the Town had turned over the land to the United States for consideration on September 27, 1988, and did not complain that the Band had not agreed to the conditions at that time. *See id.* Although the court stated that the Band's agreement to these provisions "may be inferred by the Town's willingness to grant the land to the United States in trust for the Band," *id.*, there is no evidence in the record that the Band has ever agreed to these conditions.

The Band is obligated to make PILOTs to the Town. Plaintiffs' Statement of Material Facts ("PSMF") (Docket No. 9)¶ 7; Affidavit of Don LeVasseur ("LeVasseur Aff.") (Docket No. 10) ¶ 3; *Houlton I*, 950 F.Supp. at 412. The Band's obligation pursuant to *30 M.R.S.A. § 6208(2)* is to make PILOTs to the Town in an amount equal to that which the Town would otherwise impose on that land. PSMF ¶ 7; LeVasseur Aff. ¶ 3.

On April 22, 1988, the Band's Tribal Council adopted an ordinance that established the Houlton Band of Maliseet Indians Tribal Housing Authority. *See Houlton I*, 950 F.Supp. at 412. This Authority was properly organized pursuant to *30–A M.R.S.A. § 4995. See id.* at 413. On April 1, 1991, the Band leased to the Authority the land at issue, and the Authority, not the Band, owns the improvements on that property until the expiration of the lease. *See id.* at 412; PSMF ¶ 10; LeVasseur Aff. ¶ 4; Affidavit of Aaron Greenlaw ("Greenlaw Aff.") (Docket No. 11) ¶ 4. Pursuant to *30–A M.R.S.A. § 4742(4)*, the Authority itself is obligated to make its own PILOTs. *See Houlton I*, 950 F.Supp. at 413 n. 3. Don LaVasseur, the Tribal Planner of the Band, is not aware of any agreement between the Town and the Band concerning the amount of the PILOTs on that portion of the land that is leased to the Authority. PSMF ¶ 5; LeVasseur Aff. ¶¶ 1–2.

The Band has calculated and offered PILOTs for 1992 through 1998, but there is no evidence in the record to demonstrate that the Town accepted these payments. PSMF ¶¶ 6, 9; LeVasseur Aff. ¶¶ 6–7, 9. The Authority calculated it PILOTs for the year 1994 through 1998, and has paid in three separate checks a total of $3,750.72 toward those PILOTs. PSMF ¶¶ 11, 15; Greenlaw Aff. ¶¶ 9–20. The Town endorsed these checks with the notation above the endorsement as "accepted as partial payment."[5] *Id.*

## DISCUSSION

The Town makes a contractual argument in support of its position that the Band owes PILOTs on the improvements.[6] It contends that no trust land exists without these conditions, for it granted its approval for the acquisition of the trust lands only upon the Band's acceptance of these conditions. The Town argues that since *Houlton I* determined that the land was trust land, it must have determined that the approvals and the conditions were val-

Plaintiffs disputed, with record citations, much of the Town's Statement of Material Facts, there is no dispute that the Town made its approval of the acquisition of the trust land contingent upon this condition. The dispute at issue is whether the Plaintiffs ever agreed to this condition.

5. Because the Town and the Housing Authority have failed to enter into a cooperation agreement pursuant to *25 U.S.C. § 4111(c)*, the United States Department of Housing and Urban Development is unwilling to release escrowed PILOTs for 1997 and 1998. PSMF ¶ 16; Greenlaw Aff. ¶¶ 20–21.

6. There is no question that the Band must make PILOTs on the land that it owns. The state, via the Maine Implementing Act, provides that the Band shall make a PILOT in amount equal to that which the municipality would otherwise impose on the land or other natural resources. *See 30 M.R.S.A. § 6208(2)*.

id. (See Opp'n to P.s' Mot. for Summ.J. at 4).

There is no evidence that the Band ever agreed to the conditions. In any event, the Town claims that it is significant that the Band elected to proceed with the acquisition of trust land without objecting to the conditions. It also argues out that, in proceeding with the acquisition of trust land, the Band impliedly accepted the conditions. (See Opp'n to P.s' Mot. for Summ.J. at 2, 4). The Town cites no authority in support of these arguments.

■ The Court finds that the Band is not required to make PILOTs on the improvements to the "Longstaff" parcel. As the Court in *Houlton I* stated, the Town had turned over the land to the United States for consideration on September 27, 1988, and did not complain that the Band did not agree to the conditions at that time. *Houlton I*, 950 F.Supp. at 411. This Court concludes that the Town has waived any possible right it may have had to enforce those conditions. Moreover, since the Band never signed any contract containing the conditions, the Statute of Frauds would prevent the Town from enforcing them. *See 33 M.R.S.A. § 51.* The conditions require that the Band make PILOTs on the improvements for a period longer than a year, and the Statute of Frauds requires that such agreements be in writing and signed by the Band. *See id. § 51(5).*

■ The Court also repeats the finding in *Houlton I* that the Authority is properly organized pursuant to *30–A M.R.S.A. § 4995. See* 950 F.Supp. at 413. The Town disagrees but the point was lost in the prior litigation and cannot be relitigated here. *See also,* 30–A M.R.S.A. § 4995, apparently overriding § 4721. Therefore, the Authority, not the Band, is responsible for making PILOTs on the improvements that it owns on the Longstaff parcel. *See 30–A M.R.S.A. § 4742(4)* (stating that a housing authority should make PILOTs "it determines are consis-tent with the maintenance of the low-rent character of projects").

The Court declines to state in greater detail the amount of the PILOTs that the Authority and the Band owe. It is sufficient to state that the Band owes PILOTs on the land at issue and the natural resources pertaining to it, and the Authority owes PILOTs on all improvements to the land. Accordingly, the Court dismisses the Town's counterclaim for $458,471.31 without prejudice. In doing so, the Court reiterates *Houlton I* in stating that the Town can come back to this Court to request judgment against the Band or the Authority if either of those parties fail to make the PILOTs that it owes. *See* 950 F.Supp. at 412 n. 2, 413 n. 3. However, if the Town does request such a judgment because the Authority or the Band have not made their PILOTs, it must provide in more specific detail than it has in this proceeding to date evidence to establish the amount of money then sought by the Town for the PILOTS. *See id.* In any event, the amount that the Band owes will be significantly less than the $458,471.31 that the Town is presently requesting, for the Band is not responsible for making PILOTs on the improvements.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment on Count I to the extent the Court holds that the Authority, not the Band, is responsible for PILOTs on the improvements on the land at issue. The Court **DENIES** the Town's motion for summary judgment without prejudice.

So **ORDERED**