**Luis R. RONDA PEREZ,
et al., Plaintiff(s)**

v.

**BANCO BILBAO VIZCAYA ARGENTARIA PUERTO RICO, et al.,
Defendant(s).**

**Civil No. 03–1415 (JAG).**

United States District Court,
D. Puerto Rico.

June 24, 2004.

Enrique J. Mendoza–Mendez, Mendoza Law Office, Natacha Prego–Cruz, San Juan, PR, for Plaintiffs.

Pedro J. Manzano–Yates, Rosa M. Mendez–Santoni, Fiddler Gonzalez & Rodriguez, P.S.C., Hato Rey, PR, for Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On April 5, 2004, defendant Banco Bilbao Vizcaya Argentaria Puerto Rico ("BBVA–PR") moved for summary judgment on plaintiffs Luis R. Ronda Perez ("Ronda") and his wife Mercedes A. Quesada Rodriguez's ("Quesada")(collectively "plaintiffs") claims of age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, as well as supplemental state law claims (Docket No. 21). On May 10, 2004, plaintiffs opposed the motion (Docket No. 30). For the reasons discussed below, the Court **GRANTS** defendant's motion for summary judgment.

## FACTUAL BACKGROUND

Ronda held the position of Regular Branch Manager of BBVA–PR's Vega Alta Branch since August 1, 1998 (Docket No. 21, Defendant's statement of uncontested material facts, ¶ 1). He consistently received performance-based salary increases during the years prior to his termination (Docket No. 30, Plaintiffs' statement of facts, ¶ B–D).

On February 28, 2002, Nelida Colon ("Colon"), an employee at BBVA–PR's Vega Alta Branch, met with Manuel Frias ("Frias"), BBVA–PR's Human Resources Officer, and filed a complaint against Ronda (Docket No. 21 at ¶ 1). Colon stated that Ronda made comments about the women who entered the Vega Alta Branch using hand gestures to emphasize his observations, such as "Look at that young woman, she is good looking, Nelly, did you see that young woman," and "look Noel [Torres], look at that bosom, look at those hips." (*Id.* at ¶¶ 4–6). Colon further claimed that Ronda lacked professionalism, as he had, in a sarcastic and derogatory manner, commented to branch employees

about a former branch manager's bankruptcy filing and had discussed an employee's evaluation with a client (*Id.* at ¶ 7). During their meeting, Colon handed Frias a handwritten memo she had prepared as an outline of the matters she wished to discuss with him (*Id.*, Exh. III).

After the meeting with Colon, Frias telephoned Ronda and notified him of the complaint filed against him (*Id.* at ¶ 9). On March 4, 2002, Frias personally visited the Vega Alta branch to interview the employees as part of his investigation into Colon's complaint (*Id.* at ¶¶ 10, 11). Frias met with bank teller Amarilis de Leon ("de Leon"), bank teller Carmen Morales ("Morales"), "Gestor de Particulares" Carmen Illas ("Illas"), and Assistant Branch Manager Noel Torres ("Torres") (*Id.* at ¶ 12). The female employees interviewed stated that they felt offended by Ronda's constant sexual comments regarding the female clientele and that they did not trust him because he had commented on clients' confidential information (*Id.* at ¶¶ 13, 14). Frias took notes of the interviews with each employee (*Id.*, Exh. V).

Frias then met with Ronda to obtain his reaction (*Id.* at ¶ 16). Frias informed him about the employees' complaints (1) that he divulged confidential client information, (2) that he discussed an employee's performance evaluation with a client, (3) that he discriminated against students who visited the branch to obtain information for their assignments, (4) that he meddled in the lives of Colon and de Leon, (5) that he did not go out looking for new business for the bank, and (6) that he made comments regarding women who entered or walked in front of the branch (*Id.* at ¶ 17). Ronda denied the allegations and asserted that it was Torres who warned him when a woman entered the bank by pressing the door buzzer (*Id.* at ¶ 18). Ronda acknowledged that the allegations were serious and that,

if true, they would constitute sufficient grounds for termination (*Id.* at ¶ 19). Frias took notes of his meeting with Ronda (*Id.*, Exh. V).

Frias then met with Torres. Torres informed Frias that he had met with Ronda on one occasion, following a client's expression of displeasure after observing his behavior, and informed him that his comments regarding women could be perceived as being in bad taste (*Id.* at ¶ 20). Torres, showing remorse and ashamed of his conduct, acknowledged that he sometimes "buzzed" Ronda when a woman entered the bank (*Id.* at 21). This admission resulted in a written reprimand and a warning against further conduct of that nature (*Id.* at 22).

Frias then interviewed the branch employees for a second time (*Id.* at ¶ 23). They reaffirmed their previous complaints of Ronda's behavior (*Id.* at ¶ 24). As part of his investigation, Frias prepared a handwritten summary of the employees' interview and had each of them review and sign it (*Id.* at ¶ 25). He then prepared a confidential report addressed to Alfredo Izquierdo ("Izquierdo"), BBVA–PR's Director of Human Resources (*Id.*, Exh II). Frias recommended that Ronda be terminated from his employment based on the results of his investigation (*Id.* at ¶ 27). Although Ronda denied the allegations, Frias believed the employees' account of the facts because they were consistent and he saw no motive for them to fabricate the story to prejudice him (*Id.*). Furthermore, Frias believed Torres' account because it revealed his own involvement in acts of misconduct (*Id.*).

Frias then met with Patrick Haggarty ("Haggarty"), Executive Vice–President of Retail Banking, and with Maria Socorro Rivera ("Rivera"), Unit Managing Director for the Northeastern Area and Ronda's immediate supervisor at the time, and in-

formed them of his recommendation to terminate Ronda's employment (*Id.* at ¶ 29). Haggarty and Rivera agreed with Frias recommendations (*Id.*). Afterwards, Frias met with Izquierdo to discuss his findings and recommended that Ronda be terminated from his employment (*Id.* at ¶ 34). Frias based his recommendation on his investigation and not on Ronda's age (*Id.* at ¶ 35).

Ronda was terminated from his employment on April 19, 2002 (Docket No. 30 at ¶ A). Ronda was 54 years old at the time (*Id.*). On August 28, 2002, defendant hired Ana Rosa Arbelo ("Arbelo") to replace Ronda as Vega Alta Branch Manager (*Id.*). She was 42 years old at the time (*Id.*).

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

B. *Defendant's motion for summary judgment*

1. *Ronda's ADEA claim*

When a plaintiff, as here, lacks direct evidence of discrimination, Courts apply the Burden shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, Ronda must first establish a *prima facie* case of age discrimination by demonstrating that (1) he is within the protected class (over the age of forty); (2) that his job performance was satisfactory and met his employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that defendant sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills. *See Pueblo Int'l*, 229 F.3d at 53; *Mesnick v. General Electric Co.*, 950 F.2d 816, 823 (1st Cir. 1991); *Flamand v. American Int'l Group, Inc.*, 876 F.Supp. 356, 368 (D.P.R.1994);.

Establishing a *prima facie* case generates a rebuttable presumption of discrimination. While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate non-discriminatory reason for the adverse employment action. *See Mesnick*, 950 F.2d at 823. "This entails only a burden of *production,* not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." *Id. (citing Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Medina–Munoz*, 896 F.2d at 9)(emphasis added). If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that age was a motivating factor in the challenged employment action. *Zapata–Matos v. Reckitt & Cole-*

*man, Inc.*, 277 F.3d 40, 45 (1st Cir.2002). To do so, plaintiff must show that the proffered reason is pretextual such that discriminatory animus can be inferred. *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir.2002). "It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive, age discrimination.'" *Mesnick*, 950 F.2d at 824 (*quoting Medina–Munoz*, 896 F.2d at 9).

■ The facts of the case demonstrate that Ronda was 54 years old at the time, that he was terminated from his employment, that his job performance until his termination was satisfactory, and that BBVA–PR's need for a person with equivalent skills to fill the Branch Manager position continued after his termination. Thus, the Court finds that Ronda has established his *prima facie* case of age discrimination.

■ Next, BBVA–PR must articulate a legitimate non-discriminatory reason for Ronda's termination. BBVA–PR proffers that it based its decision to terminate Ronda on Colon's complaint and Frias' findings from the ensuing investigation that Ronda had violated BBVA–PR's rules of conduct. In support of this contention, BBVA–PR has submitted as exhibits to its motion for summary judgment Frias' memorandum to Izquierdo recommending Ronda's termination from employment (Exh. II), as well as a letter hand-written by Colon enumerating her complaints about Ronda (Exh. III), notes of Frias' interviews with Colon, Morales Illas, and de Leon (Exh. VII), statements under penalty of perjury by Frias (Exh. I), Haggarty (Exh. XI), Rivera (Exh. XII), and Izquierdo (Exh. XIII). Furthermore, BBVA–PR included copies

of its privacy (Exh. X) and sexual harassment (Exh. IX) policies and of its rules of conduct (Exh. VIII). Thus, the Court finds that BBVA–PR has met its burden of production and overcome the presumption that it discriminated against Ronda.[1]

Finally, the burden shifts to Ronda to demonstrate, without help from the presumption of discrimination, that his age was a motivating factor in BBVA–PR's decision to terminate his employment. This is where his case fails.

■ As stated above, Ronda cannot prevail by merely questioning the veracity of BBVA–PR's justification, but "he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive, age discrimination.' " *Mesnick,* 950 F.2d at 824 (*quoting Medina–Munoz,* 896 F.2d at 9). "[T]he ultimate question becomes whether, on all the evidence of record, a rational factfinder could conclude that age was a determining factor in the employer's decision." *Id.* at 825 (*citing United States Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). "[A] plaintiff must offer some minimally sufficient evidence, direct or indirect, both of pretext and of the employer's discriminatory animus to prevail in the face of a properly drawn [Fed.R.Civ.P.] 56 motion." *Id.* "And, in this circuit, the employee must produce 'not only minimally sufficient evidence of pretext, but evidence that overall reasonably supports a finding of discriminatory animus.' " *Bresett v. City of Claremont,* 218 F.Supp.2d 42, 44 (D.N.H.2002)(*quoting LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 843 (1st Cir.1993)). "The plaintiff 'may not simply refute or question the employer's reasons. To defeat summary judgment at this stage, a plaintiff must produce evidence that the real reason for the employer's actions was discrimination.' " *Id.* (*quoting Gadson v. Concord Hospital,* 966 F.2d 32, 34 (1st Cir.1992)).

■ Ronda does not, however, produce any evidence to demonstrate that BBVA–PR's proffered reason is a mere pretext for discrimination or that a discriminatory animus lurked behind its decision to terminate his employment. Rather, he expends his efforts in attacking the veracity of the allegations made against him by the branch employees, the credibility of the employees' testimony, and the evidence itself as inadmissible hearsay. This is plainly insufficient to meet his heavy burden of persuasion.

Plaintiff argues that he can establish pretext because the record shows that: (1) defendant's articulated reasons for his termination are false; (2) defendant never disclosed to Ronda that he was being investigated nor being terminated because allegations of sexual harassment had been made against him; (3) defendant has changed the articulated grounds for termination; (4) Ronda was treated differently than Torres during the investigative process; (5) Ronda was disciplined differently than Torres; (6) defendant violated its own procedures when it investigated the allegations against Ronda; (7) defendant's affiants are biased and interested parties; (8) the credibility of defendant's witnesses is at issue; (9) Ronda was offered, upon termination, an offer for payment and release of his ADEA claims; (10) Ronda had a history of good performance and salary increases; (11) Ronda was treated differ-

---

1. The Court notes that defendant also submitted what appears to be Frias' notes from his first round of meetings with the branch employees (Exh. V). Because no certified translation was submitted, however, the Court will not consider them as part of the record. *See Estades–Negroni v. Associates Corp. of North America,* 359 F.3d 1 (1st Cir.2004).

ently when he presented claims to the Human Resources Department; and (12) the investigation report is inadmissible because it was addressed to and consulted with counsel of record.

Even assuming *arguendo* that these arguments do create an issue of material fact, they are irrelevant to the core issues of this case. Ronda has done nothing to dispute that BBVA–PR received a complaint against him, that it interviewed the branch employees, that it believed at the time that the allegations made by the employees were true, and that its decision to terminate him was based on these facts and not on his age. That Torres received a more lenient punishment is inapposite. Torres, unlike Ronda, admitted his wrongdoing and showed remorse for his behavior and that is why Frias recommended he be reprimanded. Had he denied his actions, Frias would have recommended his termination as well (*See* Docket No. 21, Exh I at ¶ 17).

Simply put, if age was a motivating factor, Ronda has not even remotely shown that he can prove it. Accordingly, on the record as it stands, BBVA–PR is entitled to summary judgment on Ronda's ADEA claim.

### 2. *Supplemental state law claims*

Having dismissed Ronda's ADEA claims, no federal claims to ground jurisdiction remain in this case. Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise its supplemental jurisdiction over his state law claims. Accordingly, the Court dismisses these claims without prejudice.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** BBVA–PR's motion to dismiss. Ronda's ADEA claims are hereby dismissed **with prejudice**. State law claims are hereby dismissed **without prejudice**. Judgment shall enter accordingly.

IT IS SO ORDERED.